ROBINSON, Receiver, &c., *v.* HOWES and SUYDAM.

The right of a bank to set off its claim on the drawer of a protested bill of exchange against his demand for the undrawn deposit arising from the discount of the paper, though suspended while such paper is held by one to whom the bank has transferred it and who has a lien thereon, revives when the bank extinguishes the lien and re-possesses itself of the paper.

Such set-off is available against an assignee of the deposit, where the bank re-possessed itself of the paper without notice of his claim.

APPEAL from the Superior Court of Buffalo. Upon the trial the defendants, to establish a set-off, proved these facts. On the 29th August, 1857, the Hollister Bank of Buffalo, of which the plaintiff was receiver, discounted a sight draft made by one Monteath on Grant, Sayles & Ford of New York, and passed the amount to Monteath's credit. Two days afterwards the Hollister Bank failed. Grant, Sayles & Ford were informed of the fact and advised by Monteath not to accept the draft. It was protested, and Monteath, on the 21st of September, 1857, assigned to the defendants his claim against the Hollister Bank for the amount credited to him on the discount; the plaintiff claiming the right to hold the money on account of the dis-honoring of the draft. At the time of such assignment the draft was held by the Corn Exchange Bank of New York, who claimed a lien upon it for a balance due from the Hollister Bank. This claim was discharged by the receiver before the commencement of this action. The judge disallowed the set-off and ordered judgment for the plaintiff, which having been affirmed at general term, the defendants appealed to this court. The cause was submitted on printed points.

*John H. Reynolds*, for the appellants.

*Solomon G. Havens*, for the respondent.

GROVER, J. The set-off claimed by the defendants was properly disallowed by the court. This was for a credit

given by the Hollister Bank to Monteath, upon the discount by the bank for him of his draft payable at sight, drawn upon Grant, Sayles & Ford of New York. The draft was duly presented to the payees, and payment refused, pursuant to the advice of Monteath to Messrs. Grant, Sayles & Ford. This gave the bank the right to balance the credit by charging Monteath with the draft in his account. The defendants, as assignees of Monteath, had no greater rights than his assignor. Monteath, upon the discount of the draft by the bank, had a right at once to the proceeds, but not having drawn the money from the bank prior to the protest of the draft for non-payment, the bank could at once return the draft to him, and cancel the credit, or avail itself of the draft as a set-off against the demand of Monteath for the proceeds.

It is claimed by the defendants that the plaintiff is precluded from canceling the credit given to Monteath for the proceeds of the draft in this way, because at the time of the assignment of this credit by Monteath to him, the draft was in the possession of the Corn Exchange Bank, that bank having a lien upon it, with other paper of the Hollister Bank, for whatever balance might be due from the latter to the former. While the Corn Exchange Bank so held the draft, the Hollister Bank or the plaintiff could not charge the same to the debit account of Monteath, and thus cancel the credit given for the proceeds, or use it as a set off in an action brought by Monteath for the money. To enable the Hollister Bank or the plaintiff to do either, the title to the draft must be absolute, and the holder able to discharge Monteath from all liability as drawer. This could not be done while the Corn Exchange Bank had a lien upon the draft for a general balance against the Hollister Bank. When the lien of the Corn Exchange Bank was satisfied by the plaintiff, he acquired the same title to the draft he would have had, had no such lien ever existed, with the same right to use it against Monteath. The defendants gave no notice of the transfer of the credit for the proceeds of the bill by Monteath to them, and, upon well settled principles, the claim of the defendants for that credit, whether they sought to enforce

it by action or by way of set-off, was subject to any defence that existed against Monteath at the time the bank or plaintiff had notice of the transfer. (*Code*, § 112, *clause* 8, § 18; 2 *R. S.*, 354.) No question was made upon the trial as to the surrender of the draft by the plaintiff to Monteath. I do not see how any could be made. When the plaintiff elected to use the draft to cancel the credit given to Monteath upon its discount in the way above stated, and did so use it, the liability of Monteath as drawer became extinguished. The judgment should be affirmed.

· SELDEN, J. The appellants, Howes and Suydam, seek to set off the sum of $2,500, credited to Monteath upon the books of the Hollister Bank upon the 29th of August, 1857, and still standing to his credit on the 21st of September thereafter, when it was assigned by him to the appellants.

As Howes and Suydam never advanced anything upon the faith of this credit, nor gave, so far as appears, any notice to the plaintiff of its assignment, their rights in respect to it are precisely the same as those of Monteath himself. To entitle themselves to the set-off, they must show that Monteath at the time of the trial, or at least at the time of his assignment to them, could have set off the sum claimed, in a suit upon this draft; or that he could have maintained an action against the bank for its recovery. In examining the case as between the Hollister Bank and Monteath, it will be well to lay out of view, in the first instance, the transfer of the draft to the Corn Exchange Bank, and the claim of the latter upon it.

The credit upon its books is *prima facie* evidence that the Hollister Bank owed Monteath the sum credited; but it is not conclusive. When it is shown that in justice and law he was not entitled to the credit, his *prima facie* claim is overthrown. By the discount of the draft and the entry upon the books, on the 29th of August, a valid claim was created in favor of Monteath, which would have remained unimpaired, if he had not interfered with the payment of the draft. The failure of the bank might have afforded some apology for, if not a justifica-

tion of, this interference by Monteath, if he had also voluntarily relinquished the credit he had obtained. But to stop the payment of the draft, and at the same time seek to retain the credit arising out of it, was a palpable breach of good faith, for which there is no justification.

The interference by Monteath clearly authorized the bank to recede from its contract with him. It still had the proceeds of the draft in its hands. The contract remained in substance executory. The money had never been paid over. There was therefore no difficulty in restoring both parties to their original position: and this is the criterion by which the right to rescind in such a case must be tested. The bank was not bound to rescind. It was at its option to surrender the draft and cancel the credit, or to retain the draft as a valid claim against Monteath. The question then arises, whether this right continued up to the time of the trial, or whether it had been lost by delay.

The right to rescind is no doubt one which may be lost by delay; but this can only be where something has been done by the other party to create an equity, which can be set up in opposition to the right: as where the party whose right it is to rescind, having had a reasonable time to elect, the other party has incurred some obligation or expense upon the faith of the continued existence of the contract. There is nothing of this kind here on the part of Monteath; and we are considering the case now as between him and the bank, irrespective of the assignment to the appellants, or the transfer of the draft to the Corn Exchange Bank.

Had the trial then been between the plaintiff and Monteath alone, the former, if there had been no previous transfer of the draft, might still have elected upon the trial to rescind the contract and cancel the credit. In doing so, however, he should have produced and surrendered the draft; and the question arises, whether the neglect to do this at the trial was a fatal omission.

The draft, which appeared upon the trial to be in the possession of the plaintiff, was effectually annulled and destroyed,

by his election to cancel the credit given for its proceeds. It could never afterwards be set up by anybody as a valid instrument; still the defendants were entitled to its surrender, and if it appears that they had put themselves upon that ground, or in any way specifically raised the point, it may be that the omission could not afterwards be cured. But nothing of this kind appears in the case; and as the surrender of the draft upon the argument at general term would be equally effectual to protect the defendants as if done at the trial, and as no possible benefit could result to the defendants from the granting of a new trial, so far as this point is concerned, the judgment ought not in my opinion to be reversed for this reason.

Unless therefore the case is changed, either by the fact that the draft was at one time held by the Corn Exchange Bank, or by the assignment by Monteath to the appellants, the judgment below is clearly right. I do not see that the former circumstance could affect the right of the plaintiff to rescind, as between him and Monteath. Suppose the Hollister Bank had actually transferred the draft for value, previous to its present-ment, might it not, on discovering the fact of the interference by Monteath with its payment, re-purchase the draft, and then on surrendering it cancel the credit upon its books? The interest of Monteath could be in no manner affected by the previous transfer of the draft. All that he could require would be that the other party should fully restore him to his original condition; and it would be sufficient if the bank was able to do this at the time of its election to rescind. A transfer of the draft by the bank after knowledge of the interference by Monteath, would no doubt have prevented any subsequent rescision, because it would have amounted to an election to treat the contract as subsisting; and such an election once made could not be revoked. But a transfer prior to any such knowledge, could have no such effect.

It may still be said, that as the plaintiff was not in a condition on the 21st of September, when the assignment was made, to surrender the draft, Monteath had at that time a valid claim

to the proceeds, and that this claim having been then transferred to the appellants, their rights cannot be affected by anything subsequent. But the answer to this is that the appellants having parted with nothing, upon the faith of the credit upon the books of the bank, took the claim with all its infirmities. They obtained the rights of Monteath and nothing more. If they had given notice to the plaintiff of the assignment he would perhaps have been compelled to make his election to rescind before commencing his suit against the appellants, and putting them to the expense of a defence, which but for the set-off might not have been made. But as no such notice is shown, the appellants must abide by the rules which govern the case as between the plaintiff and their assignor. The judgment of the Superior Court should be affirmed.

All the judges concurring,

Judgment affirmed.